## Ricketts & Stewart *versus* Unangst.

A sale of personal property by a constable on execution, (which is required, by the eleventh section of the act of 20th March, 1810, to be by *public vendue*,) made to the plaintiff in the execution, no person but the constable being present at the sale, is illegal and invalid.

ERROR to the Common Pleas of *Columbia county*.

This was an action of trover, brought by Ricketts & Stewart against Edward Unangst, for the value of one hundred and thirty-five sheaves of rye. The rye had been the property of *William Cunningham*, and, while yet growing in the ground, was levied on, under executions issued on two judgments against him before a justice of the peace, one in favor of John Remley, administrator of Peter Stiner, and the other in favor of *Ricketts & Stewart*. These executions were put into the hands of *A. Bomboy, deputy constable*, who levied on this rye in the ground, as fourteen acres, and also one-third of thirteen acres of corn, and one-third of thirteen acres of oats. The levy was first made on Remley's execution. The deputy constable advertised the sale to take place on the 24th of June, 1848. On that day, before he started for the place of sale, Ricketts and Stewart gave him a bid of $14 for the rye, $4 for the corn, and $4 for the oats; and the deputy constable then went to Cunningham's, and found nobody there; the family locked up the house, and had all gone from home; *no person attended as bidder*. The deputy constable went ·to each field of grain, and cried each in a loud voice, at the bids of Ricketts & Stewart, and then came to the road opposite one of the fields, and there struck them down to Ricketts & Stewart, at the bids sent by them with him. He then came back to Orangeville, and told Ricketts & Stewart that he had struck off the property at their bids, and they then paid him $15.21, the amount of Remley's execution, and $6.79 was applied *to their* own. The deputy constable made return on both executions that the property was sold to *Ricketts & Stewart*. Ricketts & Stewart were not informed, when they paid the amount of their bids, that there had been no persons in attendance at the sale; nor had they any ·knowledge how the sale had been conducted. There was no collusion between the deputy constable and them to get the property at their bids. The deputy constable asked Daniel Peeler to go to the sale, and testifies that he made no effort to sell the property secretly, but tried to get the best price he could, and did all he thought the law required. *After* the levies made by deputy constable Bomboy, a levy was made by constable Snyder on one-third of this rye in the ground, and fourteen small shoats, under an execution in favor of David Mellick against Wm. Cunningham, who advertised the property for sale on the 27th of June, on which day (three days after the sale to Ricketts & Stewart) he sold one-

[Ricketts & Stewart *v.* Unangst.]

third of the rye and the fourteen shoats to *Edward Unangst*, for $2.67, which money Unangst handed to him. There was some evidence that this money was furnished by Mrs. Cunningham. After the rye became ripe, Ricketts & Stewart sent hands who cut it, and then *Unangst* and the daughters of Cunningham hauled away the sheaves.

ANTHONY, J., charged the jury that the plaintiffs acquired no property in the rye in the ground, by virtue of the alleged sale by Bomboy; that they were not entitled to recover; and in answer to a point on part of plaintiffs, he charged that the sale was illegal and invalid, even if the jury believed that there was no collusion between the plaintiffs and Bomboy.

Verdict was rendered for defendant.

It was assigned for error:

1st. The court below erred in admitting the evidence as per plaintiffs' 1st, 2d, and 3d bills of exception.

2d. In charging the jury that the sale by Bomboy was not valid, and that plaintiffs acquired no property in the rye in the ground, by virtue of the alleged sale by Bomboy, and that the verdict of the jury ought to be for the defendant. 3d. In their answer to plaintiffs' point.

The case was argued by *Comly*, for plaintiffs in error.—The 11th section of the act of 20th March, 1810, requires the sale to be by *public vendue;* that the term *vendue* means simply a sale, not by auction, but by outcry; and, in its accepted meaning, does not imply the necessity of more than one bidder, or the presence of spectators; that a public vendue is merely a public sale by outcry; that there is no law requiring the presence of a purchaser, or that forbids him sending his bid either by the constable or any other person.

In this case, the property was incapable of removal, and the sale is required to be where the property is situate, so that it can be examined and seen: 17 *Johns.* 116.

Irregularity in an advertisement of sale will not affect the validity of it, unless the purchaser was privy to it: 2 *U. S. Dig.* 354, pl. 890.

*Pleasants*, with whom was *Buckalew*, for Unangst.—4 *Watts* 257, Robins *v.* Bellas, referred to.

PER CURIAM.—There can be no public sale without bidders or by-standers. If there was one bidder, and he not the execution creditor or the controller of the sale, it might make a case of difficulty, because, if the officer got a single bid, the property might be fairly struck down at its value, but not at a bid greatly below its value; but the

officer ought not to offer the property before an attendance so thin. It would plainly be his duty to adjourn the bidding to another time; and if he did not, the inference of collusion with the bidder would be so strong that the least spark of evidence of it would invalidate the sale. But the case is infinitely worse when the execution creditor is both buyer and seller. The presumption of collusion is then irresistible and conclusive. We do not say he may not send his bid to the place by the officer; but had he actually attended and bid, without competition, the legal effect would have been the same. Policy requires that such transactions be strictly guarded.

Judgment affirmed.