National Cash Register Company, Appellant, *v.* Berg.

Argued March 5, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Baldrige and Graff, JJ.

*James K. Peck* and with him *Ralph W. Rymer*, for appellant.—The words "Shall" and "May" are imperative and mandatory as used in the Act of March 27, 1772, cited: Quinn v. Wallace, 6 Wharton 452; Thompson v. White, 4 S. & R. 135.

*Lee Stark*, of *Welles, Mumford & Stark*, for appellee. —A statute directing the mode of procedure by a public officer is in general deemed directory; a precise compliance is not essential to the validity of the proceeding unless so declared, cited: Erie City v. Willis, 26 Pa. Superior Ct. 459.

Opinion by Graff, J., May 6, 1930:

Plaintiff instituted this action of replevin to recover two cash registers which had been leased by bailment

lease to Thomaries, who had placed them in premises occupied by him as a tenant. The registers were distrained for rent by the landlord through a deputy constable. The levy and notice of distress was made and given November 5, 1925, and appraisement made upon November 12, 1925. Upon November 19, 1925, a public sale of the cash registers was made, and thereafter the plaintiff issued this action of replevin for said registers. No counter-bond was filed, and plaintiff retained possession of them. The case was referred to a referee, who directed an entry of judgment in favor of the intervening defendants, who had purchased the registers at the constable's sale. Exceptions filed to the referee's report were dismissed and the court below entered judgment in favor of the intervening defendants in the sum of $400, with interest from July 23, 1929, from which judgment the plaintiff filed this appeal.

The plaintiff raises four questions in its appeal. It first contends that the distress proceedings were illegal and void, for the reason that the oath administered to the appraisers was not in compliance with the Act of Assembly of March 21, 1772, 1 Sm. L. Section 1. It is sufficient to say the record discloses that the oath administered to the appraisers which is conclusive in this case, is in writing. An examination thereof discloses that said oath is in strict conformity with the Act of Assembly.

The plaintiff secondly contends that the entire proceedings were illegal and void, for the reason that the oath was administered by a deputy constable, instead of a sheriff, under-sheriff, or constable, as designated in the act. The Act of Assembly provides ''The person so distraining shall and may with the sheriff, under-sheriff or any constable in the city or county where such distress shall be taken (who are hereby required to be aiding and assisting therein), cause the goods and chattels so distrained to be appraised by

two reputable freeholders ......." The Act of Assembly does not mention a deputy constable, and the question is fairly raised as to his authority to conduct distress proceedings. The right of a constable to appoint a deputy is recognized in Pennsylvania by section 113 of the Act of 1834, P. L. 537, and its supplements, which provides that a constable may appoint a deputy, after first having obtained the approval of the court of quarter sessions. A deputy constable may be appointed for various reasons, when shown to the satisfaction of the quarter sessions court. The constable so appointing executes his office by himself or by his deputy. No separate office of deputy constable exists under the law, and when a vacancy occurs in the office of constable, ipso facto the deputy ceases to exist as .such. By long usage and custom deputy constables have performed all duties which constables are authorized by law to perform. The Act of March 20, 1810, 5 Sm. L. 161, Section 2, authorizes justices of the peace to issue a summons or warrant of arrest, directed "to the constable," and the Act of July 9, 1901, P. L. 614, Section 1, provides that writs issued by a justice of the peace shall be served in the county where they are issued "by the constable." The right of a deputy constable to make service of these writs has never been questioned. The Act of August 22, 1752, 1 Sm. L. 218, Section 1, governing domestic attachments provides that a justice of the peace may grant a writ of attachment to any constable of the same county. The Supreme Court in McCormack v. Miller, 3 P. & W. 230, held that a deputy constable may execute such an attachment. The court stated upon page 236: "Much was said about the authority of a constable and a deputy constable. I see no reason why a constable who has according to law appointed a deputy constable who has been approved by the court, should not still be constable, and capable to act and execute process; nor why a general deputy of that

constable, when so appointed, cannot execute one kind of process as well as any other kind.'' The deputy constable in the case under discussion was clothed with the same authority as a constable, and accordingly all acts performed by him were as valid as if performed by the constable.

The plaintiff's third contention is that the distress proceedings were illegal and void, for the reason that the appraisement was made six days after the levy, instead of five days, as required by the Act of Assembly. Said Act of Assembly provides as follows: ''If the tenant or owner of the goods distrained shall not within five days next after such distress taken and notice thereof ...... replevin the same with sufficient security to be given to the sheriff according to law, then and in such case, after such distress and notice aforesaid and expiration of the said five days, the persons distraining shall and may ...... cause the goods and chattels so distrained to be appraised by two reputable freeholders ...... and after such appraisement shall and may after six days public notice, lawfully sell the goods and chattels so distrained,'' etc. The five days between the day of seizure and the time when appraisement could be made is given to afford the tenant opportunity to pay the rent, or replevin his goods. This time exists solely for the benefit of the tenant, and it has been held that an appraisement made before the lapse of the full five days after the seizure makes the distrainer a trespasser ab initio: Davis v. Davis, 128 Pa. 100. But it is held in McKinley v. Reader, 6 W. 34, where possession of a room on the premises as a pound for the goods distrained was retained during the period of eight days, the landlord, if a trespasser at all, would only be such for the three days excess, and the distress therefore not invalidated from the beginning. This case is cited with approval in Holland v. Townsend, 136 Pa. 392, where the Supreme Court, commenting upon it on

page 405 says: "In both the foregoing cases, it was held that if the landlord was a trespasser at all for having kept the goods on the premises for eight days, he would be a trespasser only for the three days excess beyond five days, and the distress was therefore not invalidated from the beginning." The plaintiff was not injured by the additional day allowed to it in which to replevin, and under the authority of the foregoing case, the sale of the registers was not void ab initio.

The plaintiff's fourth contention is that the sale was irregular and void, for the reason that it was made seven days after the appraisement instead of on the sixth day. The Act of Assembly hereinbefore quoted provides "And after such appraisement shall and may after six days public notice lawfully sell the goods and chattels so distrained." In Holland v. Townsend, supra, the Supreme Court held that an adjournment of seven days after the date fixed originally was not unreasonable, and did not invalidate the sale. The court said upon page 403 "The duty to sell the distress is imperative and it must be after six days public notice, but nothing in the act declares that the sale can take place only on that one day . . . . . . . The act simply requires a notice of at least six days before making the sale. It is therefore indispensable that a public notice of that length be given, but beyond that nothing is required by the act prerequisite to a perfect sale. A power of adjournment is incident to a power to sell, unless an adjournment is prohibited by express words or necessary implication, but there is nothing of that kind in this act. A general power to sell is given, accompanied by no restriction except that six days notice must be given." At least six days public notice of sale was given, and the date fixed allowing one additional day's notice was not unreasonable, and did not invalidate the sale.

The order of the court below is affirmed.