## Preno Petition

*Harry F. Kaiser*, for petitioners.

*James F. Tracey, Jr.*, Assistant District Attorney, for Philadelphia County,

FLOOD, J., April 25, 1951.—We have before us the petitions of two constables, one elected for the twenty-second ward of the City of Philadelphia, and the other

for the forty-first ward of the city. Each petition asks for the appointment of a deputy constable, and recites that the elected constable, "reposing special trust and confidence" in the person named as deputy, appoints and deputes him to be deputy constable of the ward "with power to officiate in said office, and to do whatsoever, by the laws of the State, appertains to the said office". No reason is given as to why the appointment should be made, nor is it stated that there is a necessity for the appointment.

The petitions were presented to us without supporting testimony. The constable and the proposed deputy in each case appeared at the bar of the court but were not questioned as to the necessity for the appointment. The district attorney stated that the suggested deputies had no criminal records and nothing further was developed at the hearing.

These petitions and this type of hearing have become customary in Philadelphia, and the court of quarter sessions has generally approved all such applications if no evidence of a criminal record or of bad character of the proposed deputy is produced at the hearing.

We have been deterred from following this routine in these cases for a number of reasons. Hon. James J. Clothier, the chief magistrate, has informed the court that there are many more constables and deputy constables active in the city than are necessary. The district attorney, who is at present investigating certain activities of constables, deputy constables and private detectives which are under criticism says in his brief that there are too many deputies today and competition among them leads to abuses. He has suggested to us that no deputies should be appointed without a hearing and a showing of need for the appointment. As a result we felt that we should reëxamine the subject before approving the appointments requested.

There is evidence of the appointment of deputy constables very early in the history of the common law. The office of constable itself is very ancient, and goes back, according to Blackstone, at least to the time of Edward III: 1 Blackstone 355-56. Evidence of the right of constables to appoint deputies appears in the cases of Midhurst v. Waite, 3 Burr. 1260, 97 Eng. Rep. 821 (1761), and King v. Stubbs, 2 T. R. 395, 398, 100 Eng. Rep. 213, 214 (1788), and in the literature of a much earlier period. Cf. Shakespeare, Measure for Measure, Act II, Scene II.

At the time of the American Revolution constables were the chief conservators of the peace. This meant that in the cities a considerable number of deputies were necessary if the peace were to be preserved. The watchmen in eighteenth century London, mentioned by Fielding and Dickens, while authorized by statute, were, in effect, deputy constables with all the powers of constables while they were on duty: 1 Blackstone 357.

The constables and their deputies were very ineffective preservers of the peace in cities. During the Lord George Gordon riots in London in 1780 the mob had the streets to themselves until the military was called. At the first march of the mob against the House of Parliament only 5 of 80 sworn constables could be found to attempt a stand against them. During the next three or four days of the riots the constables and their deputies disappeared and remained in hiding while the mob invaded the House of Commons and burned down many of London's houses, climaxing their activities by burning down Lord Mansfield's mansion as is so dramatically portrayed by Dickens in Barnaby Rudge, and in Lord Campbell's Life of Mansfield. This experience, among other things, led Parliament to establish a metropolitan police force for London and the surrounding area. Similar situations

in America led to the establishment of city police forces here.

Stephen Girard, in his will, left money to the City of Philadelphia to enable it to establish a police force. The result of all this is that now the police force has taken over the duty of preserving the peace in Philadelphia as it did previously in London and many other cities, and the constable's function as a preserver of the peace has withered away. However, no statute has ever deprived him of that function.

According to Blackstone, writing in 1776, constables had the duty of keeping the peace in their district. For that purpose they were armed with powers of arresting, imprisoning and breaking open houses and the like "of the extent of which powers", Blackstone observed, "considering what manner of men are for the most part put into these offices, it is perhaps very well that they are generally kept in ignorance": 1 Blackstone 356.

Blackstone's opinion that the powers of the constable should be more restricted than they were in his day appears to be shared by the judiciary which periodically seems to feel called upon to write opinions telling the constables what their duties are, and particularly what they are not. See In re Application for the Appointment of Deputy Constables, 11 Phila. 391 (1875) and Deputy Constables, 4 Dist. R. 217 (1895), discussed infra.

Be this as it may, the constable still has the powers of a peace officer in Philadelphia. If he were still the sole conservator of the peace it is easily seen that he would need a great many deputies, since only two constables are to be elected for each ward in the city, except perhaps in the twenty-first, twenty-second, twenty-third and twenty-fourth wards, or in wards later created out of those wards. See Act of March 30, 1858, P. L. 185; Act of February 2, 1854, P. L. 21,

sec. 26; Petition of Robert McKinney, 18 Phila. 480, 43 L. I. 250 (1886). At any rate only a few more than 100 constables are to be elected in Philadelphia, and if the responsibility to keep the peace still rested upon them they would have the right very freely to appoint deputies. They evidently had this right in the eighteenth century when the duty did rest upon them. There is nothing to indicate that in Pennsylvania they did not once have the same right of freely appointing deputies as they had in England in the eighteenth century.

In 1820 we find the first Pennsylvania statute affecting this right. This statute provided that no general or partial deputation be made by any constable without the approval of the quarter sessions court except in a civil suit or proceeding at the request and risk of plaintiff and required by the urgency of the occasion: Act of May 28, 1820, 7 Sm. L. 308, sec. 5. Since that time deputies can be appointed by constables in Philadelphia only with the approval of the quarter sessions court.

The act which now controls the subject is the Act of June 19, 1913, P. L. 534, 13 PS §21. This act provides for the appointment of deputies in any ward by the constable of that ward subject to the approval of the quarter sessions court, and contains a provision that no person shall be appointed unless he be a bona fide resident of the ward and so continue for the time during which the appointment is made. It has been uniformly held since the passage of the Act of 1820 that the court of quarter sessions has discretion in the approval of deputy constables, and in every case which we have seen the constable was required to show a necessity for the appointment before the court would approve it.

The first case which discusses the subject is In re Application for the Appointment of Deputy Con-

stables, 11 Phila. 391 (1875). In this case a petition was held insufficient which set forth that the constable is "desirous of appointing George H. Bower as his deputy". The court refused to appoint the deputy because no reason was given for the appointment. The court said "to grant his prayer would be simply to force upon the citizens of the Twelfth Ward an additional constable, to deprive the other constable whom they have elected of his fair proportion of the business of the ward. When the aldermen of the ward have more work than the elected constables can attend to, the court may consider applications for the appointments of deputies . . . The office of constable . . . has its franchises of honor and profit as well defined as any other office in the gift of the people. He is their officer, and when elected, may not decline to act without being subject to a severe penalty. He is therefore entitled to our consideration and protection when the franchises of his office are endangered, and will receive it. The security thus given to the constables will suggest to them a higher appreciation of the dignity of their office, and insure fidelity in the performance of its duties. We hope so at least": Id., at 392 (1875).

In Deputy Constables, 4 Dist. R. 217 (1895), Judge Bregy, in refusing to appoint a deputy where no real reason was given for the appointment, said that the petition "must present to the court such a state of facts as convinces us that he is unable to perform the duties of his office faithfully, either by reason of personal disability, or in consequence of the volume of the business." In Newton v. Luzerne County, 12 Dist. R. 695 (1903), Judge Wheaton doubted whether there was any right in an elected constable to appoint a general deputy for the purpose of performing all the functions of the constable. In Huber's Application, 30 Dist. R. 759 (1920), Judge Stewart of the Northampton County court said:

"For reasons often verbally stated by President Judge Scott and myself, the courts ought not to approve of the appointment of deputy constables as a matter of course. The people elect a man as constable, and he ought to serve or resign when incapacitated. . . . The practice. of approving the appointment of deputies is a bad one, and has never been encouraged by this court."

In Re Jacob Horivitz, 27 Dist. R. 578 (1918), a case involving a petition for the revocation of the appointment of a deputy, Judge Finletter said:

"The propriety of this action might be justified on another ground. An inspection of the petition upon which this deputy's appointment was approved shows that he was deputed 'to officiate in said office and do whatever, by the laws of the state, appertain to said office' (in other words, a general deputation), for no other reason than 'a special trust and confidence in his prudence'. 'There is no authority whereby a constable can generally depute the performance of his duties to another'. . . . There must be some reason for the appointment of a deputy such as 'personal disability, the volume of business', or, the like. . . . 'The court will not approve the appointment of a deputy where the constable is able to attend to all the business of the ward'. . . . Under these authorities, the appointment of this deputy, being a general one, made without any reason, was illegal."

In Townsend's Application, 22 D. & C. 14 (1934), the court considered an application based upon the constable's need for a deputy to keep the peace in the borough, "owing to the size and population of the said borough". The court held that since the petition showed no physical disability or excessive work or other unusual conditions with regard to the elected constable, the petition must be refused.

Two cases in the appellate court seem to take a broader view of the constable's right to appoint a deputy. McCormick v. Miller, 3 P. & W. 230 (1831) was an action against a constable for money had and received. The Supreme Court said:

"Much was said about the authority of a constable and a deputy constable. I see no reason why a constable, who has according to law appointed a deputy, who has been approved by the court, should not still be constable, and capable to act and execute process; —nor why a general deputy of a constable, when so appointed, cannot execute one kind of process as well as any other kind. . . . Although it is expected that the process will be executed by a deputy constable, yet it ought to be directed to the constable of the township."

National Cash Register Co. v. Berg, 99 Pa. Superior Ct. 34 (1930), was an action to set aside an appraisal and sale by a deputy constable following the issuance of a landlord's warrant. The court said:

"The Act of Assembly does not mention a deputy constable, and the question is fairly raised as to his authority to conduct distress proceedings. The right of a constable to appoint a deputy is recognized in Pennsylvania by section 113 of the Act of 1834, P. L. 537, and its supplements, which provides that a constable may appoint a deputy, after first having obtained the approval of the court of quarter sessions. A deputy constable may be appointed for various reasons, when shown to the satisfaction of the quarter sessions court. The constable so appointing executes his office by himself or by his deputy. No separate office of deputy constable exists under the law, and when a vacancy occurs in the office of constable, ipso facto the deputy ceases to exist as such. By long usage and custom deputy constables have performed all duties which constables are authorized by law to perform. The Act of March 20, 1810, 5 Sm. L. 161, sec.

2, authorizes justices of the peace to issue a summons or warrant of arrest, directed 'to the constable', and the Act of July 9, 1901, P. L. 614, sec. 1, provides that writs issued by a justice of the peace shall be served in the county where they are issued 'by the constable'. The right of a deputy constable to make service of these writs has never been questioned. The Act of August 22, 1752, 1 Sm. L. 218, sec. 1, governing domestic attachments provides that a justice of the peace may grant a writ of attachment to any constable of the same county. The Supreme Court in McCormick v. Miller, 3 P. & W. 230, held that a deputy constable may execute such an attachment. . . . The deputy constable in the case under discussion was clothed with the same authority as a constable, and accordingly all acts performed by him were as valid as if performed by the constable."

The result of these two appellate cases appears to be that a deputy constable, once his appointment is approved by the court of quarter sessions, has all the powers of the constable. However, the opinion of the Superior Court just quoted came from a case arising in Lackawanna County. McCormick v. Miller, supra, was an appeal from a case in Cumberland County. All that was said cannot apply in Philadelphia County today in view of certain statutory provisions.

In Philadelphia it is provided by the Act of February 5, 1875, P. L. 56, sec. 15, that each magistrate shall select from the constables in commission in the City of Philadelphia, such number, not exceeding three, as shall be necessary to the prompt service of process and the official performance of all other duties of constable and that they shall hold their office at the pleasure of the magistrate.

Under this act it was held in Re Applications for the Appointment of Deputy Constables, 11 Phila. 391 (1875) that an application by a constable to appoint

a deputy upon the ground "that he has been assigned to Magistrate's Court No. 20, and that he will be unable to attend to the duties of said office without the assistance of a deputy" must be dismissed; that a constable cannot appoint a deputy for the purpose of performing services for the magistrate; that the magistrate alone can ask for the appointment of a person to perform the duties of the constable in case any of the constables prove incompetent or neglect the business of the court. The court cited the Act of 1875, supra, but relied upon a clause which does not appear to have been in the act when passed. The decision was made shortly after the act was passed. No doubt the judge had before him the draft of the act which contained the clause he quoted: Pennsylvania Legislative 'Journal (1875), page 42. This clause, however, dropped out before the act was finally passed by the Legislature: Id. at pp. 138, 169-71. This clause as quoted by the court provided that ". . . in case any of said constables prove incompetent, or shall neglect the business of said courts, any of the judges of the court of quarter sessions of said city shall, upon application of any magistrate, appoint a competent person to perform the duties of said constable." The court held that under this language only the magistrate could apply for the appointment of a constable to perform services for him. The real holding of the court, however, is not that the magistrate has the right to ask for the appointment, but that the appointment of a deputy for the work of the magistrate's court cannot be made upon the application of the constable. This holding was followed 20 years later by Judge Bregy in Deputy Constables, 4 Dist. R. 217 (1895). He quoted the same nonexistent statutory clause from the earlier opinion. The holding seems now to be settled law even though partly based upon this nonexistent statutory provision. It is in our opinion sound

law even if first arrived at by error. It is not the first time a sound legal conclusion has been reached by a pathway built upon mistake.

The magistrate has the right to appoint three constables to serve his process under the Act of 1875 (as substantially reënacted in the Act of May 10, 1927, P. L. 866, sec. 22, 42 PS §1062, and preserved by the Magistrates' Court Act of June 15, 1937, P. L. 1743, sec. 46, 42 PS §1147). If he has this right and may choose his own constables from all the elected constables of the city, it would seem obvious that the constable whom he has chosen has no right to foist upon him another person by having a deputy appointed to take over these duties. If the constable cannot perform the duties assigned by the magistrate, the magistrate, as the appointing authority, may dispense with his services and choose another constable in his place. This being so, deputies may be appointed in Philadelphia only for the purpose of performing the constable's other duties, not his duties as magistrate's constable. Consequently, the language of the Superior Court in National Cash Register v. Berg, supra, to the effect that deputy constables can execute process issued by the justice of the peace cannot apply to deputy constables serving process issued by magistrates in Philadelphia. The only two cases which have passed upon the point hold that the deputy constables cannot be appointed by constables to execute such process and we think that this has not only become settled law for Philadelphia County but that it is the proper construction of the language of the Act of 1875 and effectuates its manifest intention.

We, therefore, conclude:

1. A deputy constable may not be appointed except upon a petition to the court by a duly elected constable, setting forth a reason or necessity for the appointment.

2. Normally the only reason for which such appointment will be made is that the duly elected constables in the ward for which the appointment is asked have more business in the ward than they can perform.

3. While some of the cases say that a constable has a right to appoint a deputy because of the constable's illness or incapacity, yet in such case, the constable, if his incapacity is of a permanent nature, should, rather than appoint a deputy, resign his office so that a successor may be appointed. See Act of March 20, 1929, P. L. 32, sec 1. Cf. the Act of May 27, 1841, P. L. 400, sec. 14, as amended May 7, 1929, P. L. 1581, 13 PS §31.

4. A constable in Philadelphia County cannot appoint a deputy to perform any of the constable's functions in the services of process and other duties performed for magistrates under the Act of February 5, 1875, P. L. 56, sec. 15, as reënacted May 10, 1927, P. L. 866, sec. 22, 42 PS §1062.

5. While the constable has a right to exercise his functions throughout the city under the Act of March 29, 1851, P. L. 272, sec. 12, 42 PS §1077, it is questionable whether the deputy constable, who has to be and remain a resident of the ward during his incumbency, and who cannot serve a magistrate's warrant, can exercise his functions beyond the limits of the ward.

6. The number of deputy constables to be appointed should not be so great as to deprive the elected constables of the honors and franchises of their offices as set forth by Judge Finletter in Re Application for Appointment of Deputy Constables, supra. This is particularly important in the situation which has been called to our attention by the chief magistrate and the district attorney. If an excessive number of deputy constables is appointed, the economic pressure upon both them and the duly elected constables may be so

increased that the weaker among them will yield to the temptation of adopting the improper procedures of which there have been complaints.

No reason has been assigned for the appointment made by the constables in the petitions before us. Therefore, the petitions cannot be granted.

The petitions are dismissed.