**In re Appointment of George M. HUNTER as Deputy Constable in the 19th Ward, City of Allentown.**

**Appeal of Dennis C. Huber.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 22, 2001.

Decided Aug. 16, 2001.

Joseph P. Maher, Allentown, for appellant.

Steven M. Luksa, Allentown, for appellee.

Before SMITH, J., FRIEDMAN, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Dennis C. Huber, an elected constable in the 19th Ward of the City of Allentown, Pennsylvania, appeals from two orders of the Court of Common Pleas of Lehigh County (trial court): the April 3, 2000 order denying Constable Huber's Petition For Disqualification Of Judge and the April 18, 2000 order denying · Constable Huber's Petition To Appoint Deputy Constable. We affirm both orders.

On or about December 9, 1999, Constable Huber filed a petition (Appointment Petition) requesting that the trial court approve the appointment of George M. Hunter as an additional deputy constable for the 19th Ward. (R.R. at 3a–7a.) In his Appointment Petition, Constable Huber averred: "The volume of the business in the 19th Ward, City of Allentown, is such that [Constable Huber] is unable to complete his various duties and responsibilities within a reasonable period of time and is in need of further assistance." (Appointment Petition at ¶ 4; R.R. at 3a.) The Office of the District Attorney of Lehigh County objected to the appointment, and a hearing was scheduled for February 18, 2000. Subsequently, Judge Robert L. Steinberg granted Constable Huber's request for a continuance, and the matter was relisted for a hearing on April 3, 2000. (R.R. at 2a, 8a.)

Just prior to the April 3, 2000 hearing, Constable Huber filed a petition (Disqualification Petition) seeking to have Judge Steinberg disqualify or recuse himself in the action in conformance with Canon 3 C of the Pennsylvania Code of Judicial Conduct, which requires a judge to disqualify himself from a proceeding in which his impartiality might reasonably be questioned. (R.R. at 17a–19a.) In the Disqualification Petition, Constable Huber provided several reasons which he alleged "reasonably call into question the ability of Judge Steinberg to impartially rule in this matter." (Disqualification Petition at ¶ 11; R.R. at 18a–19a.) In listing these grounds for disqualification, Constable Huber focused on a period approximately five years earlier, when Judge Steinberg served as the District Attorney of Lehigh County. Constable Huber alleged that, as District Attorney, Judge Steinberg undertook several investigations of Constable Huber's activities, and, likewise, Constable Huber requested the Pennsylvania Attorney General to investigate the Lehigh County District Attorney's Office while Judge Steinberg held the position of District Attorney. In addition, Constable Huber alleged that, on at least one occasion, he and then District Attorney Steinberg exchanged harsh words during a confrontation at a constable's meeting.[1] (Disqualification Petition at ¶¶ 8–10; R.R. at 18a.)

After hearing Constable Huber testify with respect to the Disqualification Petition, (see N.T. at 36–46; R.R. at 26a–36a), Judge Steinberg concluded that he could be fair with respect to Constable Huber's Appointment Petition. Consequently, Judge Steinberg entered an order denying the Disqualification Petition and proceeded with testimony regarding Hunter's appointment as a deputy constable. (See N.T. at 47–48; R.R. at 37a–38a.)

---

1. In the Disqualification Petition, Constable Huber also noted that, at the conclusion of the hearing on the request for continuance, he indicated a preference to have the case reassigned at random rather than have Judge Steinberg continue to preside over the matter. In addition, Constable Huber stated that he was President of the Lehigh Constables' Association, one of two such associations operating in Lehigh County, and that Judge Steinberg had publicly expressed a higher regard for members of the other organization. (Disqualification Petition at ¶¶ 5–7; R.R. at 18a.)

During this phase of the hearing, Constable Huber offered testimony as to why he needs a deputy constable. Specifically, Constable Huber stated that he currently operates on a sixty-five to eighty hour work week and, as a result, has started having health problems related to his workload. (N.T. at 49, 72–74; R.R. at 39a, 62a–64a.) Constable Huber points out that, prior to his attempt to have Hunter appointed, there was a deputy constable assigned to the 19th Ward; however, this deputy resigned at the end of 1999. Constable Huber testified that, if he is to remain able to fulfill his obligations as elected constable of the 19th Ward, another deputy needs to fill that vacant position. (N.T. at 49, R.R. at 39a.) Constable Huber explained that, between January 1999 and March 2000, the Lehigh County Constable Association answering service received approximately 2,047 telephone inquiries, approximately 800 of which required some form of response. (N.T. at 50, 60, 74; R.R. at 40a, 50a, 64a.) According to Constable Huber, without the assistance of a deputy certified to carry a concealed weapon, he is now the only certified officer able to handle these calls, and, consequently, he has had to turn some callers away. (N.T. at 49–50, 55, 68–69, 81; R.R. at 39a–40a, 45a, 58a–59a, 71a.)

After hearing the testimony,[2] Judge Steinberg gave counsel for both parties until April 10, 2000 to file a supporting memorandum of law. Then, on April 18, 2000, he issued a ruling denying the Application Petition. Based on all the evidence, Judge Steinberg concluded that Constable Huber had not demonstrated the requisite necessity for Hunter's deputation in the 19th Ward. Constable Huber now appeals that decision.

■ On appeal, Constable Huber first contends that Judge Steinberg erred when he failed to recuse himself from presiding over Constable Huber's Application Petition despite compelling evidence that the two had a prior history of confrontation over constable related issues.

■ In general, recusal is required whenever there is substantial doubt as to a jurist's ability to preside impartially.[3] *Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310 (1995); *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976). However, the issue of recusal is addressed particularly and peculiarly to the conscience and sound discretion of the judge; therefore, if the judge feels that he or she can hear and dispose of the case fairly and without prejudice, that decision will be final absent an abuse of discretion. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985); *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983). Because the integrity of the judiciary is compromised by the appearance of impropriety, a jurist's recusal is necessary where his behavior appears to be biased or prejudicial. *Rohm and Haas Co. v. Continental Casualty Co.*, 732 A.2d 1236 (Pa.Super.1999), *appeal granted*, 562 Pa. 673, 753 A.2d 820 (2000). Thus, before it can be said that a judge should have recused himself or herself, the record must clearly show prejudice, bias, capricious disbelief or prejudgment. *Nemeth v. Nemeth*, 306

---

2. In addition to Constable Huber's testimony, Judge Steinberg heard testimony from Hunter and from David Leh, District Justice for the area that includes the 19th Ward.

3. A jurist's impartiality is called into question whenever he has doubts as to his ability to preside objectively and fairly in the proceeding or where there exist factors or circumstances that may reasonably question the jurist's impartiality in the matter. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976).

Pa.Super. 47, 451 A.2d 1384 (1982). The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal. *Darush.* Here, Constable Huber fails to meet that burden.

Constable Huber bases his Disqualification Petition on his past relationship with Judge Steinberg, alleging that, during Judge Steinberg's service as District Attorney, he conducted an investigation of Constable Huber and, in a harsh exchange of words, confronted Constable Huber over matters concerning constables. However, the testimony offered by Constable Huber does not support his claims of bias.

In connection with the investigation of his activities, Constable Huber recalled only brief dealings with agents of the District Attorney's Office, noting that they questioned him on several occasions and, on one occasion, took documents from him. (N.T. at 37; R.R. at 27a.) Moreover, with respect to the alleged personal confrontations between Constable Huber and then District Attorney Steinberg, Constable Huber conceded that these actually were public debates at constables' meetings; Constable Huber agreed that the debates might have involved legal interpretations where some of those present at the meeting took his view while others sided with District Attorney Steinberg.[4] (N.T. at 39–40; R.R. at 29a–30a.) Constable Huber could offer no examples of harsh words exchanged between himself and District Attorney Steinberg; in fact, Constable Huber acknowledged that it was only his "impression" that District Attorney Steinberg issued a personal attack on him during the debates. (N.T. at 41; R.R. at 31a.) Finally, Constable Huber claimed that Judge Steinberg had acted with animosity toward him in a previous hearing regarding Hunter's appointment as a deputy constable.[5] (N.T. at 44–46; R.R. at 34a–36a.) However, Constable Huber conceded that Judge Steinberg did not disapprove Hunter's appointment as deputy but, rather, continued the matter pending completion of the required fingerprint check on Hunter. (N.T. at 47–48; R.R. at 37a–38a.)

After considering the facts and allegations upon which Constable Huber premises his argument, we disagree that they establish substantial doubt as to Judge Steinberg's impartiality. Further, our review of the record indicates that Judge Steinberg displayed no bias while presiding over the merits of the case, and he provided each party with an equal opportunity to present its position. Accordingly, because we cannot conclude that Judge Steinberg abused his legal discretion by refusing to recuse himself, Constable Huber's first argument must fail.

■ Next, Constable Huber argues that the trial court abused its discretion and made errors of law by failing to approve Hunter's appointment as a deputy constable. Section 1 of the Act of June 19, 1913, P.L. 534, 13 P.S. § 21, which governs the appointment and eligibility of deputy constables, provides that:

> the sole power to appoint a deputy constable, or constables, in any ward, borough, or township, shall be vested in the constable of such ward, borough, or township, subject to the approval of the

---

4. Constable Huber could recall only one debate with any specificity but noted that "[t]here were several other minor debates over the years", in all, totaling "at least three." (N.T. at 39, 43; R.R. at 29a, 33a.)

5. Although Constable Huber did not include this claim in his Disqualification Petition, he referred to it during his testimony.

court of quarter sessions [6] as provided by law; and that no person shall be appointed as a deputy constable unless he shall be, at the time of his appointment, a bona fide resident of the ward, borough, or township for which he shall have been appointed, and shall continue to be a bona fide resident for the time during which such appointment is made.

Based on this language, Constable Huber asserts that "the only statutory ground for disapproval is that the deputy constable does not reside .... [in] the same ward as the constable who has sought his appointment." (Constable Huber's brief at 13.) According to Constable Huber, because Hunter is a resident of the 19th Ward, the trial court should have approved Hunter's appointment as a matter of course, and the court erred in applying a "needs" test in ruling upon and denying the Application Petition. Alternatively, Constable Huber contends that, if a "needs" test does exist with regard to the appointment of a deputy constable, the trial court abused its discretion in concluding that Constable Huber failed to demonstrate a need for a deputy constable in the 19th Ward. We disagree.

■ There can be no question that a constable's power to appoint a deputy constable is "subject to the approval of the court," thereby vesting the court with discretion when presented with a petition requesting such appointment. Although, to date, no appellate court has addressed the bases on which a trial court may disapprove a deputy constable's appointment, we view as persuasive authority the numerous county level cases that have considered this question over the course of more than a century. In these judicial decisions, the courts have held that approval of a deputy constable's appointment should not be a pro forma matter. To the contrary, the cases generally have discouraged the practice of approving deputy appointments and, thus, consistently have required a constable to show a reason or necessity for the appointment before receiving court approval. To satisfy that burden, the constable must establish an inability to attend to his duties of office because of a large volume of business, personal disability [7] or some other unusual condition. *See e.g., In re: Appointment of Deputy Constable for Jenner Township, Somerset County,* 21 Som. L.J. 47 (1962); *In re Application of Forti,* 24 Pa. D. & C.2d 198 (1961); *In re Petition of Turner,* 18 Pa. D. & C.2d 429 (1959); *In re Petition of Preno,* 77 Pa. D. & C. 193 (1952); *In re Application of Townsend,* 22 Pa. D. & C. 14 (1934); *In re Application of Huber,* 30 Pa. D. 759, 17 Northam. 340 (1920); *In re Horivitz,* 27 Pa. D. 578 (1918); *Deputy Constables,* 4 Pa. D. 217, 16 Pa. C.C. 297 (1895). Contrary to Constable Huber's contention, the testimony elicited on behalf of his Appointment Petition did not require the trial court to approve Hunter's appointment as deputy constable.

■ As reasons for seeking Hunter's appointment as deputy constable, Constable Huber testified regarding his long work week, his recent health concerns, the

---

**6.** In 1969, by constitutional amendment, the Courts of Quarter Sessions and Common Pleas were consolidated into one trial court known as the Court of Common Pleas. *In re Private Road, Cogan Township, Lycoming County,* 684 A.2d 237 (Pa.Cmwlth.1996).

**7.** It has been suggested that if the illness or incapacity is of a permanent nature, the con-

stable should resign so that the duties of the office may be satisfactorily fulfilled by another. *See In re Petition of Turner,* 18 Pa. D. & C.2d 429 (1959), citing *In re Petition of Preno,* 77 Pa. D. & C. 193 (1952); *In re Application of Huber,* 30 Pa. D. 759, 17 Northam. 340 (1920).

duties of his office as president of a local constable association, the resignation of his previous deputy,[8] and his need for another certified officer to assist in responding to the overwhelming number of calls received at the constable association's hotline. However, the trial court noted that other testimony elicited at the hearing, provided in large part by Constable Huber himself, indicated that Constable Huber's need for assistance was less compelling than initially might appear.

For example, although Constable Huber testified that he works up to eighty hours a week, he attributes only fifteen to twenty of those hours to his duties as a constable.[9] In fact, from his duties as the elected constable of the 19th Ward, Constable Huber made only $5,000 to $7,000 in all of 1999. (N.T. at 56, 72; R.R. at 46a, 62a.) Constable Huber also admitted that his health concerns are the result of stress from his combined job responsibilities, not just from his position as a constable. (N.T. at 73–74; R.R. at 63a–64a.)

Further, although Constable Huber complained of an unmanageable number of calls, he could not testify whether any of those calls required the work to be performed in the 19th Ward. Indeed, Constable Huber admitted that many calls originated from outside the ward, throughout the Commonwealth and even from out of state. (N.T. at 64–65, 67–71, 77; R.R. at 54a–55a, 57a–61a, 67a.) Also telling was Constable Huber's revelation that, in his eight years as constable for the 19th Ward, he has never spoken to, and receives no work from, the District Justice whose territorial jurisdiction encompasses the 19th Ward.[10] (N.T. at 53, 61, 75–76; R.R. at 43a, 51a, 65a–66a.)

■ Finally, and most importantly, Constable Huber's Application Petition deals specifically with the 19th Ward, and Constable Huber claims a need for a deputy constable based on an unmanageable volume of business *in the 19th Ward.*[11] However, as the trial court stated,

8. Constable Huber asserts that the need for Hunter as a deputy constable in the 19th Ward is evident, noting that a replacement for the deputy constable who had resigned clearly was required. However, we must agree with the trial court that, although the presence of a deputy constable in the past may be factor to consider in determining the current need for a deputy constable, it is not, by itself, enough to satisfy the applicant's burden. (*See* N.T. at 102; R.R. at 92a.) Because no separate office of deputy constable exists under law, *National Cash Register Co. v. Berg,* 99 Pa.Super. 34 (1930), logically, no vacancy can occur in that office. Thus, there is no requirement that a deputy succeed to that vacant office.

9. Constable Huber testified that he works forty hours per week in his full-time job as a computer programmer and twenty hours per week in a part-time position as a patrol officer. (N.T. at 72; R.R. at 62a.)

10. District Justice Leh testified that he does not know Constable Huber and noted that he has never given, and Constable Huber has never asked for, work out of the District of-

fice. (N.T. at 91, 98; R.R. at 81a, 88a.) District Justice Leh also stated that he uses approximately four constables who adequately serve his district's needs. (N.T. at 91–92; R.R. at 81a–82a.)

11. It has been held that, normally, the only reason to approve the appointment of a deputy constable is that the duly elected constables in the ward for which the appointment is asked have more business in the ward than they can perform. *Preno Petition.* Constables must remember that they were elected to perform the duties of the office, and it is a responsibility they cannot avoid. *Deputy Constables.* Thus, if an elected constable is able to attend to the duties of his office, he cannot depute the performance of those duties to another. *In re Horivitz.* In light of these principles, we take particular note of the following testimony:

Q (addressing Constable Huber) Do you feel that with your full-time job and your part-time job and your health concerns that your [sic] unable to perform your job as constable adequately?

From this testimony, we cannot conclude that the volume of [Constable] Huber's work and the stress generated thereby, are a result of his constable duties *related to the 19th Ward.* Rather, it appears that they are a function of responsibilities he has chosen to assume that are outside the jurisdiction he was elected to serve. For these reasons, we conclude that Constable Huber has not demonstrated the requisite necessity for the deputation of Mr. Hunter *in the 19th Ward.*

(Trial ct. op. at 4) (emphasis added). Having reviewed the record, we conclude that the trial court did not abuse its discretion in making this determination. Accordingly, we affirm its order denying approval for Hunter's appointment as deputy constable for the 19th Ward.

## ORDER

AND NOW, this 16th day of August, 2001, the orders of the Court of Common Pleas of Lehigh County, dated April 3, 2000 and April 18, 2000, are hereby affirmed.

A I can perform it adequately. I really would like to have a deputy to help make it a little easier on me.

(N.T. at 74; R.R. at 64a.)