**In re: John FRY.**

**Appeal of: Ian Castaneira.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2014.

Decided Feb. 27, 2015.

Reargument and Reargument En Banc Denied April 6, 2015.

Ronald L. Clever, Allentown, for appellants.

Francis T. Chardo, III, First Assistant District Attorney, Harrisburg, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge LEADBETTER.

Ian Castaneira (Castaneira), Constable for the Borough of Highspire, appeals from the order of the Court of Common Pleas of Dauphin County which denied Castaneira's petition for approval of appointment of John Fry as his Deputy Constable pursuant to 44 Pa.C.S. § 7122.[1] After argument before a three judge panel we ordered reargument en banc, sua sponte, in order to revisit this court's holding in In re Hunter, 782 A.2d 610 (Pa. Cmwlth.2001).

Castaneira has served as the elected constable for Highspire since 2010. On January 22, 2013, he filed a petition to approve the appointment of Fry as a deputy constable for the borough. After examination and investigation by the County Investigation Division of the District Attorney's Office, the District Attorney filed objections to the petition. At a hearing held before the trial court on March 11, 2013, Castaneira, appearing without counsel,[2] and County Detective Jerome Wood, testified.

Castaneira testified that he intends to appoint Fry, a retired Steelton police officer, as his deputy constable and believes him to be fully qualified for the position. Castaneira disagreed that he had to prove "need" for a deputy. He testified that he does not have back-up most of the time and has to travel into dangerous areas to serve warrants and that he needs a deputy for safety reasons. Castaneira explained that although he had served hundreds of warrants since 2010, he has been forced to work "mostly Metro" because the magistrate in his district now "refuses" to give him work and has also "opposed" him working with the Steelton and Highspire police departments serving their warrants. Hearing of March 11, 2013, N.T. at 12. On cross-examination, Castaneira agreed that his primary concern was safety and that there were not any other unusual conditions which prohibited him from fulfilling

---

1. Section 7122 provides that, as a general rule, "[s]ole power to appoint deputy constables in a ward, borough or township is vested in the constable of the ward, borough or township, *subject to approval of the court of common pleas under subsection (b)."* 44 Pa. C.S. § 7122(a) (emphasis added).

2. Castaneira objected to the trial court's denial of his request for a continuance, explaining that his attorney was unable to attend the hearing due to a conflict and that his attorney had faxed his continuance request to the court. The trial court overruled the objec-

tion, stating that "[w]e don't accept fax as pleadings under the law." Hearing of March 11, 2013, Notes of Testimony (N.T.) at 5. The trial court also noted for the record Castaneira's objections to: the participation of the District Attorney on the ground that there was no legal authority which conferred standing to him; the constitutionality of 44 Pa.C.S. § 7122; and the requirement that he demonstrate "need" for a deputy in order to get court approval of his deputy appointment. *Id.* at 5–10.

his duties. He testified: "The fact is, is that I can do my duties when I wish, but a lot of times I do not because I do not feel it's safe going on my own to [serve] a warrant." *Id.* at 14.

County Detective Wood testified that he works with the Criminal Investigation Division of the Dauphin County District Attorney's Office and was assigned to conduct a background investigation regarding Castaneira's petition. Detective Wood stated that he first interviewed Fry, the retired Steelton police officer, and that Fry's background check was "clean." Detective Wood testified that Castaneira stated during an interview that he used to serve warrants with another constable, but that the other constable was forced to stop working due to health issues. Castaneira further stated that most of his work was in Harrisburg and the surrounding townships but not in his own district. Castaneira told Detective Wood that he does not get along with Magisterial District Judge Lenker (MDJ Lenker) and that for that reason, the Judge will not assign him any work. Detective Wood testified that Castaneira said he was busy with his main employment as a real estate developer, but did not indicate that he had a tremendous amount of warrants to serve or that he had any physical disabilities or anything else that would prevent him from carrying out his duties as a constable. Castaneira told Detective Wood that he wanted to work with a partner for safety reasons. Finally, Detective Wood testified that Castaneira told him he wanted to work with Fry in particular because of Fry's police experience and his good relationship with other police officers and with MDJ Lenker, "hoping that the Judge would then assign work to them as a team...." *Id.* at 19.

The trial court determined that under the statute providing that a constable's power to appoint a deputy constable is subject to the court's approval, the court is vested with discretion in deciding a petition for approval of such appointment. The trial court further determined that Castaneira was required to show a reason or a necessity for the appointment of a deputy constable to receive court approval and that to satisfy his burden, he was required to demonstrate that he could not attend to his constable duties due to a large volume of business, personal disability, or some other unusual condition, citing *In re Hunter.* The trial court found that Castaneira's testimony showed that he did not serve many warrants in Highspire and that the majority of his constable work was in Harrisburg, Steelton and other townships outside of Highspire. The trial court also found that Castaneira failed to identify any unusual conditions that prohibited him from performing his duties, and that he acknowledged that the inherent danger in serving warrants was not an unusual condition. Finally, the trial court found that Castaneira failed to assert an inability to attend to his duties due to illness or disability. The trial court denied the petition for approval, concluding that Castaneira had failed to demonstrate the requisite necessity for the appointment of Fry as his deputy constable; that the District Attorney had standing to appear at the hearing on the petition; and that Castaneira failed to properly preserve his challenge to the constitutionality of 44 Pa. C.S. § 7122 and, therefore, waived the challenge.

Castaneira presents several issues for our review: 1) whether the District Attorney has standing in a petition for approval of appointment of a deputy constable pursuant to 44 Pa.C.S. § 7122; 2) whether Section 7122 is unconstitutional on its face because the power of the trial court to refuse a constable's appointment of a deputy constable due to a lack of need or otherwise violates the separation of powers

between the judicial and executive branch; 3) whether Section 7122 is unconstitutional as applied because a constable cannot prove "need" where the magisterial district judge in the constable's elected district does not assign him any work; 4) whether the trial court erred in requiring him to demonstrate "need" when the statute does not include a "needs" test; and 5) whether *Hunter* should be overruled because the needs test as adopted by the court is too narrow in scope and prevents other issues from being considered as part of the petition.

We first turn to the issue upon which we ordered en banc review. Castaneira argues that the trial court erred in requiring him to demonstrate a need for the appointment of a deputy constable when this requirement is not included in Section 7122. Castaneira contends that the needs test, even if it is proper, was crafted too narrowly in *Hunter,* and therefore that case should be overruled. Section 7122 provides, in pertinent part, simply that:

(a) General rule.—Sole power to appoint deputy constables in a ward, borough or township is vested in the constable of the ward, borough or township, subject to approval of the court of common pleas under subsection (b). No person shall be appointed as a deputy constable unless, at the time of appointment, he is a bona fide resident of the ward, borough or township for which he is appointed and he continues to be a bona fide resident for the duration of the appointment.

(b) Court approval and qualifications.—

(1) Except as set forth in paragraph (2), no deputy shall be appointed, either by general or partial deputization, without approbation of the court of common pleas of the county, except for special appointments in a civil suit or proceeding, at the request and risk of the plaintiff or his agent....

44 Pa.C.S. § 7122.

Nonetheless, our courts of common pleas have long required a showing of necessity for the appointment of a deputy constable by a constable. *See, e.g., Forti Application,* 24 Pa. D. & C.2d 198, 200 (1961) (The size of the township or its population is not a proper reason in the absence of incapacitation of the constable, an excessive overload or some other unusual condition); *Turner Petition,* 18 Pa. D. & C.2d 429, 430 (1959) (A large volume of business, personal disability of the constable or some other unusual condition must be shown to meet the burden of showing the reason and necessity for the appointment of the deputy); *Preno Petition,* 77 Pa. D. & C. 193, 197 (1951) (Stating that it has been uniformly held since the passage of the Act of 1820 that the court or quarter sessions has discretion in the approval of deputy constables and in each instance, the constable has been required to show necessity for the appointment before the court would approve it); *Townsend's Application,* 22 Pa. D. & C. 14, 15 (1934) (The courts must exercise judicial discretion and no deputy should be appointed where the constable is able to attend to the duties of his office, and only if he is unable to do so should there be approval of such appointment). All of these cases were cited with approval by this court in *Hunter.*

The petitioner constable in *Hunter* argued that the only statutory ground for disapproval of a deputy's appointment was that the deputy constable did not reside in the same ward as the constable seeking

his appointment.[3] The constable argued that absent such a finding by the trial court, it should have approved his appointment of a deputy constable as a matter of course. Finally, the constable argued that the trial court erred in applying a needs test in denying his petition, and in the alternative, that if a needs test did exist, the trial court abused its discretion in concluding that he had failed to demonstrate a need for the deputy constable. After noting that the grounds upon which a trial court may disapprove of a deputy constable's appointment had not been addressed by any appellate court, this court reviewed "the numerous county level cases that have considered this question over the course of more than a century" and concluded that:

> In these judicial decisions, the courts have held that approval of a deputy constable's appointment should not be a pro forma matter. To the contrary, the cases generally have discouraged the practice of approving deputy appointments and, thus, *consistently have required a constable to show a reason or necessity for the appointment before receiving court approval. To satisfy that burden, the constable must establish an inability to attend to his duties of office because of a large volume of business, personal disability or some other unusual condition.* See e.g., In re: Appointment of Deputy Constable for Jenner Township, Somerset County, 21 Som. L.J. 47 (1962); In re Application of Forti, 24 Pa. D. &

C.2d 198 (1961) [sic]; *In re Petition of Turner,* 18 Pa. D. & C.2d 429 (1959); *In re Petition of Preno,* 77 Pa. D. & C. 193 (1952); *In re Application of Townsend,* 22 Pa. D. & C. 14 (1934); *In re Application of Huber,* 30 Pa. D. 759, 17 Northam. 340 (1920); *In re Horivitz,* 27 Pa. D. 578 (1918); *Deputy Constables,* 4 Pa. D. 217, 16 Pa. C.C. 297 (1895).

*In re Hunter,* 782 A.2d 610, 615 (emphasis added, footnote omitted). After reviewing the constable's testimony regarding his asserted need for a deputy constable, the court found that only fifteen to twenty hours of his eighty hour work week were attributed to his constable duties, and that his stress and health concerns were, by his admission, the result of his combined job responsibilities, not just his constable duties. The court also found that the constable did not have an unmanageable volume of business in his ward, and thus concluded that he had "'not demonstrated the requisite necessity for the deputation of Mr. Hunter in the 19th Ward.'" *Id.* at 617 (quoting Trial Court's opinion) (emphasis omitted).

 It is apparent that the *Hunter* needs test was grounded in consistent historical application by the courts of common pleas rather than any compelling policy analysis, and after further review of the question, we must conclude it should be overruled. Constables and their deputies are not salaried public employees, but instead are paid "by the piece" for each

---

.3. 13 P.S. § 21 governed the appointment and eligibility of deputy constables. Sections 21 to 23 were repealed by the Act of October 9, 2009, P.L. 494, No. 49, § 4(2), effective in 60 days [December 8, 2009]. This section is similar to the current law at 44 Pa.C.S. § 7122(b)(1), Court approval and qualifications, which states:

> Except as set forth in paragraph (2), no deputy shall be appointed, either by general or partial deputization, without approba-

tion of the court of common pleas of the county, except for special appointments in a civil suit or proceeding, at the request and risk of the plaintiff or his agent. If a deputy no longer resides in, or ceases to be a qualified elector of, the ward in which he was appointed to serve, the court of common pleas may revoke the appointment of the deputy upon petition of five duly qualified electors of the ward and proof of facts requiring revocation.

warrant served or other service performed at the direction of a magisterial district judge. Thus the cost to the public for constable services is measured by the number of services to be performed, not by the number of constables available to perform them. We cannot discern, and neither the trial court nor the District Attorney has suggested, any sound policy reason to *require* that a constable make a showing of need before (s)he be allowed to hire a deputy.[4]

■ Nevertheless, we do not agree with Castaneira that common pleas must approve any candidate a constable chooses to hire as a deputy so long as he resides in the district. For one thing, mandating court approval would be nearly pointless if the court had no discretion in the matter but was required to rubber stamp any such resident candidate. Moreover, 44 Pa. C.S. § 7121 provides that when a vacancy in a constable position occurs, the court of common pleas "shall appoint a *suitable* person." (Emphasis added.) Clearly, the General Assembly intended the court to exercise its sound discretion in exercising its power of approval or appointment, and for good reason. Constables' duties can involve preserving the peace, making arrests, serving writs and warrants and transporting prisoners. They can be certified to carry firearms in the performance of their duties.[5] The potential for harm to the public safety that could result from the appointment of a person who has a criminal past, a history of inappropriate aggressiveness or dishonesty, emotional disturbance or bad character is obvious.

*In re Petition of Pender,* 25 A.3d 453 (Pa.Cmwlth.2011), *app. den.,* 614 Pa. 716,. 38 A.3d 827 (2012), which dealt with the appointment of a constable to fill a vacancy under Section 7121, is instructive. There, applicant Pender sought appointment as constable for the 2nd Ward in Allentown. The trial court determined that Pender was not a suitable person within the meaning of the statute and denied the petition. As the trial court explained in that case: "[Pender's] background is checkered. Civil rights actions and arrests for serious offenses are dotted throughout his career ... This Court is not satisfied that [Pender] will act in a manner that is required of its constables. The prior history of arrests, civil rights actions, and lack of any positive recommendations reflect negatively on [his] request for appointment." *Id.* at 456–57. This court affirmed the trial court's exercise of discretion.

■ It is for these reasons that we must reject Castaneira's objection to the participation of District Attorney in this matter. Castaneira admits that Section 206(a) of the Commonwealth Attorneys Act[6] provides that the Attorney General "shall be the chief law enforcement officer of the Commonwealth" and the District Attorney "shall be the chief law enforcement officer for the county in which he is elected," but argues that his power is limited to conducting criminal and other prosecutions. According to Castaneira, the statute does not give the District Attorney the power to conduct background investigations into his proposed appointee nor does it confer standing for the District Attorney to object to his petition for approval of his appointment of a deputy constable. He asserts that the District Attorney's access to investigators and criminal

---

4. We do not suggest that need may never be considered as a factor, particularly in an otherwise close case. However, it is a minor factor, and certainly not a dispositive one.

5. 44 Pa.C.S. § 7148.

6. Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. § 732–206(a).

databases which allegedly allow him to more efficiently and effectively vet such appointment petitions is not legally sufficient to confer standing.[7] We disagree.

For the reasons discussed above, any misbehavior caused by a constable or deputy constable who was not properly vetted as to his background and character would adversely affect the office of the District Attorney. For instance, improper procedures during an arrest could lead to the suppression of evidence. The use of excessive force in dealing with the public in any of the Constable's duties could lead to a serious breach of the peace. It simply cannot be said that the District Attorney does not have a significant interest in the fitness of persons charged with the duties of constable, particularly those carrying firearms. In addition, the District Attorney is the most appropriate, if not the only, entity capable of conducting a background check on the proposed candidate and presenting evidence of the results to the trial court. Certainly if any of the facts disclosed were disputed, evidentiary presentation with an opportunity to rebut would be necessary. Accordingly, we hold that the District Attorney has sufficient interest in the court's discretionary appointment of a deputy constable to have standing in petitions for approval of appointment of a deputy constable under 44 Pa.C.S. § 7122.

 With respect to Castaneira's constitutional challenge to 44 Pa.C.S. § 7122, the trial court held that Castaneira had waived his constitutional challenge because he failed to notify the Attorney General as required by Rule 235 of the Rules of Civil Procedure, Pa. R.C.P. No. 235. Although we note that the rules of civil procedure are not applicable to these types of proceedings, in his statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), Castaneira did not argue that the trial court erred in concluding that he had waived his constitutional challenge. Because Castaneira failed to include this issue in his 1925(b) statement, he has waived the issue on appeal. In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998), our Supreme Court interpreted Rule 1925(b) as establishing a clear rule for waiver and stated that any issue not raised by an appellant in a court-ordered Rule 1925(b) statement will be deemed waived on appeal.[8]

7. The concept of "standing," in its accurate legal sense, is concerned only with the question of who is entitled to make a legal challenge to the matter involved. *Meguerian v. Office of the Attorney Gen.,* 86 A.3d 924, 928 (Pa.Cmwlth.2013). Standing may be conferred by statute or by having an interest deemed deserving of legal protection. *Id.* As a general matter, "the core of the concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge." *Pa. Game Comm'n v. Dep't of Envtl. Res.,* 521 Pa. 121, 555 A.2d 812, 815 (1989) (citations omitted).

8. Even were we to address this issue, we would find it devoid of merit. "[A] legislative enactment 'is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution.'" *Commonwealth v. Mockaitis,* 575 Pa. 5, 834 A.2d 488, 497 (2003) (citations omitted). Further, "[u]nder the principle of separation of the powers of government ... no branch should exercise the functions exclusively committed to another branch." *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698, 705 (1977) (citations omitted). In fulfilling its statutory mandate under Sections 7121 and 7122, the judicial branch is neither exercising functions exclusively committed to the executive branch nor supervising the operations of the office of Constable. *Cf. In re Act 147 of 1990,* 528 Pa. 460, 598 A.2d 985 (1991). Cross branch powers of appointment, and approvals thereof, are common throughout the Commonwealth governmental structure, as well as that of our federal government.

In light of the fact that the trial court relied on the *Hunter* needs mandate in denying Castaneira's application, we would ordinarily vacate that order and remand for further consideration in light of this opinion. However, during the pendency of this appeal, the District Attorney has filed an application to dismiss the appeal as moot, based on documentary evidence that Fry has moved out of the borough in which Castaneira serves, which would disqualify Fry from appointment. Castaneira, in a somewhat disingenuous answer, has neither admitted nor denied directly that Fry has moved, but has effectively admitted it by arguing that the term "resident of the ... borough" in Section 7122 is unclear and that Fry still owns a house in the borough and "will consider" moving back if Castaneira succeeds in this appeal. Appellant's Answer to Appellee's Motion [to Dismiss the Appeal for Mootness], at 2. He also argues that, even if moot, the issue is capable of repetition but will evade review. As to the latter point, we agree that the question at the heart of this appeal is capable of repetition, particularly since Castaneira avers that Fry's change of residence may be temporary, and therefore we have decided the issue for which we granted en banc consideration, overruling *Hunter*. However, as to Castaneira's first point, regarding Fry's residency status,[9] we disagree. Castaneira's response makes clear that Fry no longer resides in the borough, and self-serving declarations of possible future intent will not overcome this fact. *See, e.g., In re: Hanssens*, 821 A.2d 1247, 1252 (Pa. Cmwlth.2003) [citing *In re Dorrance's Es-*

*tate*, 309 Pa. 151, 163 A. 303 (1932) ]. Accordingly, Fry is now not eligible under 44 Pa.C.S. § 7122 to be appointed or to serve as Castaneira's deputy, and on this basis we will affirm the trial court's order.[10] If, at any time, Fry returns to reside in the borough, Castaneira may reapply and the court of common pleas shall evaluate the application based upon the standards announced herein.

### ORDER

AND NOW, this 27th day of February, 2015, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is hereby AFFIRMED. Appellee's motion to dismiss on the ground of mootness is DENIED.

President Judge PELLEGRINI concurs in the result only.

### CONCURRING AND DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. I agree that *In re Hunter*, 782 A.2d 610 (Pa.Cmwlth.2001), should be overruled because there is no "needs test" in the statutory provision governing the appointment and eligibility of deputy constables, 44 Pa.C.S. § 7122. However, substituting a "suitability" test for the former "needs test" suffers from the same lack of foundation in 44 Pa.C.S. § 7122. I also believe that the majority prematurely decides the issue of Fry's eligibility for the position of deputy constable based upon allegations that he is no longer

---

9. Section 7122(a) provides in pertinent part that, "[n]o person shall be appointed as a deputy constable unless, at the time of appointment, he is a bona fide resident of the ... borough ... for which he is appointed and *he continues to be a bona fide resident for the duration of the appointment.*" 44 Pa.C.S. § 7122(a).

10. As our Supreme Court has noted, "[i]t is well settled that this Court may affirm for any reason and is not limited to grounds raised by the parties." *McAdoo Borough v. Com., Pa. Labor Rel. Bd.*, 506 Pa. 422, 485 A.2d 761, 764 n. 5 (1984) (citations omitted).

a resident of the borough in which Castaneira resides.

Noting that Section 7122 does not include a needs test, the majority nevertheless concludes that the court of common pleas must determine whether a prospective deputy constable appointee is a "suitable person" for the job. In so holding, the majority relies on Section 7121, which provides that when a vacancy occurs in a constable position, the court of common pleas "shall appoint a suitable person." 44 Pa.C.S. § 7121. By this provision, the legislature limits the authority of the common pleas court to choose a constable whose "suitability" will not be determined by the electorate. Section 7121 is inapplicable because there is no vacancy in the position of constable of Highspire Borough.

The statutory provision relevant to this case is 44 Pa.C.S. § 7122, which governs the appointment and eligibility of deputy constables. It states, in full, as follows:

(a) General rule.—Sole power to appoint deputy constables in a ward, borough or township is vested in the constable of the ward, borough or township, *subject to approval of the court of common pleas under subsection (b). No person shall be appointed as a deputy constable unless, at the time of appointment, he is a bona fide resident of the ward, borough or township for which he is appointed* and he continues to be a bona fide resident for the duration of the appointment.

(b) Court approval and qualifications.—

(1) Except as set forth in paragraph (2), no deputy shall be appointed, either by general or partial deputization, without approbation of the court of common pleas of the county, except for special appointments in a civil suit or proceeding, at the request and risk of the plaintiff or his agent. If a deputy no longer resides in, or ceases to be a qualified elector of, the ward in which he was appointed to serve, the court of common pleas may revoke the appointment of the deputy upon petition of five duly qualified electors of the ward and proof of facts requiring revocation.

(2) In the event of a deputy's death or inability or refusal to act, the constable of a township may, with approbation of the court of common pleas of the county where the deputy served, appoint another deputy who shall have full authority to act until the next regular session of court. The constable and his surety shall be liable for acts of the deputy as in other cases. The constable shall file a written copy of the deputization in the office of the clerk of courts of the county where the constable serves.

44 Pa.C.S. § 7122 (emphasis added). Unlike Section 7121, Section 7122 does not contain the word "suitable." The maxim *expressio unius est exclusio alterius* teaches that the General Assembly's omission of the word "suitable" from Section 7122 shows a different legislative intent. *See, e.g., Fonner v. Shandon,* 555 Pa. 370, 724 A.2d 903, 907 (1999) ("[W]here a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent.").

As the italicized language in Section 7122(a) indicates, the only express qualification for a deputy constable is that he be a "bona fide resident of the ward, borough or township for which he is appointed." Approval of the appointment by the court of common pleas is subject to subsection (b), which contains a similar residency requirement. However, Section 7122 nowhere grants the court of common pleas the discretion to inquire into the "suitability" of a deputy constable appointee. Judi-

cial review and approval of an appointment is limited to determining whether the appointee meets the residency requirement of Section 7122.[1]

In its final disposition of this appeal, the majority finds that Fry is no longer a resident of Highspire Borough, Dauphin County, where Castaneira resides. Thus, the majority concludes that Fry no longer meets the residency requirement of Section 7122 and, on that basis, affirms the trial court's order denying Castaneira's petition for approval of Fry's appointment. I disagree with this outcome.

To begin, the majority relies upon documentary evidence submitted by the District Attorney in his motion to dismiss the present appeal as moot. That evidence indicates that the address on Fry's driver's license is in Middletown Borough, Dauphin County. The majority states that Castaneira "has neither admitted nor denied directly that Fry has moved, but has effectively admitted it[.]" Majority op. at 1111. I do not see a basis for a deemed admission. In any case, I believe that more than an "effective" admission on the ultimate issue in the case is needed before this Court can affirm the trial court's order. Indeed, Castaneira avers in his response to the District Attorney's motion that Fry still owns a house in Highspire Borough and intends to live there should he be appointed as Castaneira's deputy. These are precisely the type of factual residency issues the legislature intended the common pleas court to resolve under 44 Pa.C.S. § 7122.

I would vacate and remand for further proceedings on Fry's residency.[2] Because I join the reasoning in the concurring and dissenting opinion of Judge McCullough, I would not permit the District Attorney to participate in these further proceedings.

## CONCURRING/DISSENTING OPINION BY Judge McCULLOUGH.

I agree with the Majority's conclusion that *In re Hunter*, 782 A.2d 610 (Pa. Cmwlth.2001), requiring a constable to show need in order to appoint a deputy under 44 Pa.C.S. § 7122, should be overruled. I write separately to address the remaining issues decided in the Majority's opinion.

While the Majority recognizes the absence of authority for a "needs test," I join the reasoning in the dissenting and concurring opinion authored by Judge Leavitt and believe that the Majority's crafting of a "suitability" test similarly imposes a burden of proof upon the constable that is not founded in the statutory language.

In addition, I disagree with the Majority's decision to affirm the trial court's order based on the Majority's determination that John Fry no longer meets the residency requirement of 44 Pa.C.S. § 7122; the evidence upon which the Majority relies, i.e., the address on Fry's driver's license and the fact that Ian Castaneira

1. I disagree with the majority's suggestion that the common pleas court is merely a "rubber stamp" because proving one's residency is more than a mere formality. In any event, it is not for this Court to question the legislature's wisdom in imposing only a residency requirement in Section 7122 and circumscribing the common pleas court's approval authority accordingly.

2. Castaneira's constitutional arguments were raised principally in support of his strict reading of 44 Pa.C.S. § 7122. He contends that the trial court's reading and application of 44 Pa.C.S. § 7122 violated separation of powers. These arguments are premised on 44 Pa.C.S. § 7122 having a "needs test," which this Court now soundly rejects. To the extent Castaneira wishes to have Section 7122 stricken from Title 44 of the Consolidated Statutes, he should consider an action for declaratory and injunctive relief.

"has neither admitted nor denied directly that Fry has moved," falls short of conclusively demonstrating the absence of a factual dispute.

Further, I respectfully disagree with the Majority's conclusion that the trial court's order effectuating the District Attorney's participation in this case was proper. In its opinion, the trial court dismissed Castaneira's argument that the District Attorney lacked standing as follows:

> It is unclear whether [Castaneira] challenges the role of the District Attorney as counsel, or the Commonwealth as a party. [Castaneira's] argument fails under either theory. The Commonwealth, as a party, has interest in the appointment of the deputy to an elected official, and was properly represented by the District Attorney as counsel. The District Attorney is "afforded the power to prosecute on behalf of the Commonwealth, and to decide whether and when to prosecute." *Hearn v. Myers,* 699 A.2d 1265, 1267 [Pa.Super.1997].... Additionally, the District Attorney has the authority to "initiate or discontinue prosecutions." *Id.*

(Trial court op. at 5) (emphasis added). The trial court did not elaborate, but it is clear that the trial court erroneously perceived this matter to be an adversarial proceeding to which the Commonwealth already was a party.

In pertinent part, 44 Pa.C.S. § 7122 states:

> § 7122. Deputy constables.
> (a) General rule.—**Sole power to appoint deputy constables** in a ward, borough or township **is vested in the constable** of the ward, borough or township, **subject to approval of the court of common pleas under subsection (b).** No person shall be appointed as a deputy constable unless, at the time of ap-

pointment, he is a bona fide resident of the ward, borough or township for which he is appointed and he continues to be a bona fide resident for the duration of the appointment.

44 Pa.C.S. § 7122(a) (emphasis added).

Section 7122(b), entitled "Court approval and qualifications," states that "**no deputy shall be appointed,** either by general or partial deputization, **without approbation of the court of common pleas of the county....**" 44 Pa.C.S. § 7122(b) (emphasis added).

Based upon its plain language, the procedure outlined in section 7122 to appoint a deputy constable is *ex parte* and non-adversarial in nature. As the constable, Castaneira has the "[s]ole power" to appoint Fry to the position of deputy constable, and the only limitation on this power is that the appointment is "subject to approval" of the trial court. Section 7122 does not expressly permit or otherwise suggest participation by a party-opponent contesting a constable's petition; rather, the statutory language reflects that the trial court's role is to consider a constable's petition, evaluate any evidence that he may offer on his behalf, and either approve or disapprove the petition.

The statute does not expressly or implicitly contemplate participation by the district attorney, either as an opposing party or as an intervenor. Nevertheless, the trial court gave the district attorney de facto status as a party, an action that transformed this petition proceeding into an adversarial one. Because the trial court's action was not authorized by the statute, I submit that the trial court erred in doing so.

In essence, there was no formal order granting standing or party status, no petition to intervene and no hearing on the District Attorney's ability to participate as

a de facto party. Nonetheless, the trial court granted, sua sponte, de facto status to the District Attorney as a party, contrary to the statute. Over the continuing objection of the appellant, the trial court permitted the District Attorney to cross examine witnesses and call its own witnesses in the matter.

Non-adversarial, *ex parte* proceedings of this nature, where a single party petitions the trial court for approval, are not foreign to Pennsylvania courts. *See, e.g., In re Approval of Special Counsel,* 866 A.2d 1157 (Pa.Cmwlth.2005) (discussing a solicitor's petition for court approval of special counsel); *In re Jacobs,* 936 A.2d 1156 (Pa.Super.2007) (discussing a party's petition for court approval to transfer settlement payments under the Structured Settlement Protection Act, Act 2000–1, (SB 818), P.L. 1, approved February 11, 2000, eff. in 60 days, 40 P.S. §§ 4001–09).

In *In re Approval of Special Counsel,* a county solicitor filed a petition on behalf of the board of commissioners, seeking approval of special counsel under section 904 of the County Code[1] for the purpose of obtaining legal advice in connection with litigation against the county's retirement board over pension funds. Similar to 44 Pa.C.S. § 7122, section 904 of the County Code states that the county commissioners "may appoint one or more assistant county solicitors, and, **with the approval of the court of common pleas,** special counsel who shall be attorneys at law admitted to practice in the courts of this Commonwealth." 16 P.S. § 904 (emphasis added). The county's retirement board objected to the petition but the trial court granted it and approved the solicitor's request for approval of special counsel.

On appeal to this Court, the retirement board argued that the trial court erred in granting the petition. We concluded that the retirement board lacked standing. Specifically, this Court noted that the solicitor's petition for approval of special counsel "*was not an adversarial proceeding*" but, instead, was "an administrative matter" and, as such, the retirement board was not entitled to notice and an opportunity to be heard. 866 A.2d at 1164 (emphasis added).

The same reasoning applies here with equal force. Akin to the proceedings in *In re Approval of Special Counsel,* where the solicitor sought approval from the trial court to hire special counsel, Castaneira's petition for the trial court's approval to hire a deputy constable is an administrative matter rather than an adversarial proceeding.

Additionally, although in *In re Approval of Special Counsel* there was pending litigation between the county commissioners and the retirement board, we concluded any advice rendered to the county commissioners by the special counsel would not interfere with the retirement board's management of the pension fund. Accordingly, this Court held that the retirement board's interest in the appointment of special counsel was "neither direct, substantial or immediate," and, therefore, the retirement board did not possess standing to contest the approval of special counsel. *Id.* at 1164–65.

"The concept of 'standing,' in its accurate legal sense, is concerned only with the question of who is entitled to make a legal challenge to the matter involved. Standing may be conferred by statute or by having an interest deserving of legal protection." *Meguerian v. Office of the Attorney General,* 86 A.3d 924, 928 (Pa.Cmwlth. 2013) (citations omitted). This Court sum-

---

1. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 904.

marized the common law requirements for standing as follows:

[A] person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. To establish an "aggrieved" status, a party must have a substantial interest, that is, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. Also, an interest must be direct, which means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. Further, the interest must be immediate and not a remote consequence of the judgment, a requirement addressing the nature of the causal connection.

*Stilp v. Commonwealth,* 927 A.2d 707, 710 (Pa.Cmwlth.2007).

Although the District Attorney has statutory authority to institute criminal proceedings and is charged with enforcing the law, these duties and general interests are not directly or substantially implicated in this matter and are too remote to confer upon the District Attorney standing to challenge Castaneira's petition to appoint Fry as a deputy constable.

"Simply stated, a constable is a peace officer.... By statute in Pennsylvania, a constable may also serve process in some instances." *In re Act 147 of 1990,* 528 Pa. 460, 598 A.2d 985, 990 (1991). However,

[c]onstables and deputy constables are not employees of any municipal subdivision as police and sheriffs are. They are not paid a salary by any municipal subdivision but rather are independent contractors whose pay is on a per job basis.... As independent contractors, they are not acting for or under the control of the Commonwealth and can-

not be considered Commonwealth employees in order to receive legal representation when sued in connection with their duties. No one supervises constables in the way a police chief supervises police officers or a sheriff supervises deputies. No municipality is responsible for their actions in the way a city, borough, or township is responsible for its police or a county is responsible for its sheriff's office.

*Ward v. Commonwealth,* 65 A.3d 1078, 1082–83 (Pa.Cmwlth.2013) (citations omitted).

Our Supreme Court has held that where a person is not adversely affected in any way by the matter challenged, he is not aggrieved and thus has no standing to obtain a judicial resolution of that challenge. *Hospital & Healthsystem Association of Pennsylvania v. Department of Public Welfare,* 585 Pa. 106, 888 A.2d 601, 607 (2005) (citing *William Penn Parking Garage, Inc., v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269, 280 (1975)). In order to be aggrieved, a party must show that it has a substantial, direct and immediate interest in the matter sought to be litigated. *William Penn,* 346 A.2d at 280–83. A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law; a "direct" interest requires a showing that the matter complained of caused harm to the party's interest; and an "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question. *Hospital & Healthsystem Association,* 888 A.2d at 607; *South Whitehall Township*

*Police Service v. South Whitehall Township,* 521 Pa. 82, 555 A.2d 793, 795 (1989).

Because the District Attorney does not oversee, and is not responsible for, the actions of a deputy constable, the trial court's decision to approve or not approve Fry as a deputy constable has no adverse effect on the District Attorney's functions or duties. Correspondingly, the District Attorney does not have a substantial or direct interest in the outcome of Castaneira's petition.

The Majority considers the potential for harm both to the public safety and to the law enforcement community that could result from the inappropriate appointment of a person not suitable to serve as a deputy constable. However, the reasons cited by the Majority as justification for allowing the district attorney to participate as a party—that any misbehavior caused by a constable or deputy who was not "properly vetted as to his background and character" would adversely affect the office of the District Attorney; that improper arrest procedures could lead to the suppression of evidence; that the use of excessive force could lead to a serious breach of the peace—are unconvincing. Indeed, such reasoning would apply equally well to demonstrate a district attorney's interest in the fitness of *all law enforcement officers,* police officers and sheriffs in particular, yet there is no question that this type of interest would be insufficient to confer standing on the District Attorney in actions involving the appointment of those individuals.

Like the Majority, I recognize that it may be beneficial for a trial court to have a criminal background check conducted on the appointed candidate before rendering its decision. I also believe it was appropriate for the trial court to direct that the County Investigation Division of the District Attorney's office conduct an investigation. As the Commonwealth notes in its brief, "[w]ithout the participation of the district attorney, the court would lack **an independent investigation** of need for the appointment." (Commonwealth's brief at 4) (emphasis added). However, the trial court has the inherent authority to obtain this information from a court-ordered report or witness without converting the proceedings into an adversarial contest. *See Commonwealth v. DiPasquale,* 424 Pa. 500, 230 A.2d 449, 450–51 (1967) ("The general judicial power itself, expressly allotted in every State constitution, implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and to question witnesses") (citation omitted). Thus, concerns regarding the potential for harm to the public safety and to the law enforcement community can be adequately addressed.

For these reasons, I would reverse the trial court's decision in its entirety.